**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| | : | Crim. No. 20-690 (KSH) |
| v. | : | |
| | : | |
| ALFRED TEO, SR. | : | |
| | : | |

MEMORANDUM OF THE UNITED STATES IN OPPOSITION TO DEFENDANT'S MOTIONS TO SUPPRESS AND DISMISS THE INDICTMENT, FOR A *KASTIGAR* HEARING, AND FOR THE DISCLOSURE OF GRAND JURY TRANSCRIPTS, AND IN SUPPORT OF THE GOVERNMENT'S MOTION FOR RECIPROCAL DISCOVERY UNDER RULE 16(b)(1)

Philip R. Sellinger
United States Attorney
970 Broad Street, Room 700
Newark, New Jersey, 07102
(973) 645-2800

ON THE MEMORANDUM:

Ari B. Fontecchio
Blake A. Coppotelli
Assistant U.S. Attorneys

# TABLE OF CONTENTS

**Page**


TABLE OF AUTHORITIES .................... ii

PRELIMINARY STATEMENT .................... 1

BACKGROUND .................... 2

LEGAL STANDARD .................... 9

ARGUMENT .................... 12

I. The Statements in Counsel's June 22, 2020 Email to the Government Were Not Protected by Teo's Fifth Amendment Privilege Against Self Incrimination, and Therefore No Fifth Amendment Violation Has Occurred. .................... 12

II. Because There Has Been No Fifth Amendment Violation, Suppression, Dismissal of the Indictment, a *Kastigar* Hearing, and the Disclosure of Grand Jury Transcripts Are Not Warranted. .................... 19

A. Suppression of the Contents of Counsel's June 22, 2020 Email to the Government Is Not Warranted. .................... 19

B. Dismissal of the Indictment Is Not Warranted. .................... 20

C. A *Kastigar* Hearing Is Not Warranted. .................... 22

D. Counsel's Request for the Production of Grand Jury Transcripts Should Be Denied. .................... 23

III. The Defense Is Required to Produce the Documents that It Referenced in Its June 22, 2022 Meeting with the Government. .................... 24

CONCLUSION .................... 25

## TABLE OF AUTHORITIES

**CASES** **PAGE(S)**

*Amato v. United States*,
450 F.3d 46 (1st Cir. 2006) ........ 11

*Armstrong v. Guccione*,
470 F.3d 89 (2d Cir. 2006) ........ 12

*Bank of Nova Scotia v. United States*,
487 U.S. 250 (1988) ........ 21

*Bellis v. United States*,
417 U.S. 85 (1974) ........ 9, 10

*Braswell v. United States*,
487 U.S. 99 (1988) ........ 9, 11, 12, 20

*Curcio v. United States*,
354 U.S. 118 (1957) ........ passim

*Dreier v. United States*,
221 U.S. 394 (1911) ........ 10

*Essgee Co. of China v. United States*,
262 U.S. 151 (1923) ........ 10

*Fisher v. United States*,
425 U.S. 391 (1976) ........ 9

*Giglio v. United States*,
405 U.S. 150 (1972) ........ 24

*Hale v. Henkel*,
201 U.S. 43 (1906) ........ 13

*In re Grand Jury Subpoena Issued June 18, 2009*,
593 F.3d 155 (2d Cir. 2010) ........ 10

*In re Twelve Grand Jury Subpoenas*,
908 F.3d 525 (9th Cir. 2018) ........ 10

*In re Two Grand Jury Subpoena Duces Tecum*,
769 F.2d 52 (2d Cir. 1985) ........ 11, 18, 22

*In re: In the Matter of the Grand Jury Empaneled on May 9*, 2014
786 F.3d 255 (3d Cir. 2015) ........ passim

*Kastigar v. United States*,
406 U.S. 441 (1972) ........ passim

*Mapp v. Ohio*,
367 U.S. 643 (1961) ........ 20

*Miranda v. Arizona*,
384 U.S. 436 (1966) ........ 20

*United States v. Austin-Bagley Corp.*,
31 F.2d 229 (2d Cir.1929) ........ 12, 14

*United States v. Baca*,
447 F. Supp. 3d 1149 (D.N.M. 2020) ........ 23

*United States v. Bagdis*,
488 F. App'x 593 (3d Cir. 2012) ........ 23

*United States v. Breslin*,
916 F. Supp. 438 (E.D. Pa. 1996) ........ 21

*United States v. DiAntonio*,
No. CR 13-0074 (RMB), 2016 WL 3063808 (D.N.J. May 27, 2016) .. 16, 17, 21

*United States v. Edgerton*,
734 F.2d 913 (2d Cir. 1984) ........ 16

*United States v. Fridman*,
337 F. Supp. 3d 259 (S.D.N.Y. 2018) ........ 11

*United States v. Martino*,
825 F.2d 754 (3d Cir. 1987) ........ 21

*United States v. Morrison*,
449 U.S. 361 (1981) ........ 21

*United States v. Sakai*,
No. CIV., 11-00217 LEK, 2011 WL 2581909 (D. Haw. June 7, 2011) ........ 15

*United States v. Stone*,
976 F.2d 909 (4th Cir. 1992) ..... 11

*United States v. White*,
322 U.S. 694 (1944) ..... 10

*Weeks v. United States*,
232 U.S. 383 (1914) ..... 20

*Wilson v. United States*,
221 U.S. 361 (1911) ..... 10

**STATUTES**

15 U.S.C. §§ 78j(b) ..... 2

18 U.S.C. § 3500 ..... 24

**FEDERAL RULES OF CRIMINAL PROCEDURE**

Rule 16(b)(1) ..... 24

**PRELIMINARY STATEMENT**

Alfred Teo, Sr. ("Teo" or the "Defendant"), who is awaiting trial in this matter, has moved for suppression of a "compelled statement" (though Teo hasn't made any statement in his individual capacity), dismissal of "the Indictment procured in violation of his Fifth Amendment rights," a *Kastigar* hearing, and the production of grand jury transcripts ("Defendant's Motion"),ECF 40-1 at 1. Over a century of Supreme Court precedent, the Third Circuit's decision in *In re: In the Matter of the Grand Jury Empaneled on May 9, 2014 ("May 2014 Grand Jury")*, 786 F.3d 255 (3d Cir. 2015), and the Honorable Judge Madeline C. Arleo's decisions on the same issue in the grand jury investigation of this case plainly foreclose Defendant's Motion, which should be denied.[1]

---

[1] Separately, at ECF 41, Crim. No. 20-690, Teo moves for an order to unseal and produce the Government's June 1, 2020 *ex parte* application for an order compelling AAST Holding Corp. ("AAST") to comply with the Government's April 30, 2020 subpoena for records, which the Government filed under seal *In the Matter of the Grand Jury Empaneled on November 1, 2018*, Misc. No. 18-245 (MCA). On September 28, 2022, the Government sought, and the Honorable Judge Brian Martinotti granted, an order unsealing the following grand jury materials, attached to this opposition brief as Exhibits 1-4:

(1) The Government's June 1, 2020 *ex parte* application for an order to compel AAST's compliance with the Government's April 30, 2020 subpoena (the "April 30 Subpoena") issued by the grand jury empaneled on November 1, 2018 (including the Declaration of Vijay Dewan and the four attached exhibits) (attached to this brief as Exhibit 1);

(2) The June 1, 2020 Order issued by Judge Arleo compelling production pursuant to the April 30 Subpoena (attached to this brief as Exhibit 2);

(3) The transcript of the June 17, 2020 hearing before Judge Arleo in connection with Defendant's June 9, 2020 motion to quash the April 30 Subpoena (attached to this brief as Exhibit 3); and

(4) The Court's June 18, 2020 Order denying AAST's motion to quash the April 30, 2020 Subpoena (attached to this brief as Exhibit 4).

Separately, the Government moves for reciprocal discovery of the documents that counsel referenced in a June 22, 2022 meeting with the Government, which counsel contends show Teo's innocence of the brazen tax evasion scheme with which he has been charged.

**<u>BACKGROUND</u>**

Teo was the majority shareholder of a multi-billion dollar plastics manufacturing holding company, Alpha Industries Management ("Alpha"), with offices in Lyndhurst, New Jersey, and Pompano Beach, Florida.[2] Among Teo's numerous entities was another holding company, AAST Holdings Corp. ("AAST"), a corporation formed in Fisher Island, Florida. Teo was the sole shareholder, president, and director of AAST.

On April 30, 2020, as part of the Government's investigation *In the Matter of the Grand Jury Empaneled November 1, 2018*, Misc. No. 18-245 (MCA), the Government served <u>on AAST</u>, not on Teo, a subpoena for numerous categories of records relating to AAST's finances and operations, including records related to AAST's Cost of Goods Sold (*i.e.*, the costs of producing goods sold by a company) for 2015, 2016, 2017, and 2018. (The "April 30 Subpoena," ECF 40-2, Crim. No. 20-690). The subpoena returns were due by May 8, 2020.

Throughout May 2020, despite numerous communications with counsel

Because the Government has already provided to Teo the materials he seeks at ECF 41, that motion should be denied as moot.

[2] On June 27, 2006, during his criminal trial before Your Honor, Teo pled guilty to insider trading, in violation of 15 U.S.C. §§ 78j(b) and 78ff(a). (ECF 184, Crim. No. 04-583(KSH)). On February 6, 2007, Your Honor sentenced Teo to 30 months in prison and two years of supervised release. (ECF 193, Crim. No. 04-8583(KSH)).

regarding the April 30 Subpoena, counsel failed to produce records, including those related to AAST's Cost of Goods Sold. On May 12, 2020, *after* the April 30 Subpoena was due, counsel raised for the first time a potential conflict of interest between AAST and other individuals, including Teo. On May 19, 2020, counsel confirmed that it chose to continue its representation of both AAST and Teo, and stated that it would begin production under the April 30 Subpoena. On May 20, 2020, counsel produced AAST's articles of incorporation and two sets of bank statements, but failed to produce any documents related to AAST's gross receipts, sales, or Cost of Goods Sold, as the April 30 Subpoena required.

On June 1, 2020, following a number of additional communications with counsel regarding AAST's failure to comply with the April 30 Subpoena, the Government made an *ex parte* application to Judge Arleo (attached to this brief as Exhibit 1) for an order to compel AAST's compliance with the April 30 Subpoena, setting forth counsel's delay tactics, including counsel's repeated failure to produce the required records even after representing that they would do so. On the same day, June 1, 2020, Judge Arleo issued an order compelling production (attached to this brief as Exhibit 2).

On June 4, 2020, following the order to compel, AAST requested that Judge Arleo vacate the June 1, 2020 Order. AAST argued, for the first time, and without legal support, as Teo does again here, that the April 30 Subpoena to AAST was unenforceable because compliance with the subpoena violated the Fifth Amendment rights of counsel's clients, AAST, and Teo. (June 4, 2020 Letter From Counsel for AAST to Honorable Madeline Cox Arleo). On the same day,

June 4, 2020, the Government responded that counsel's motion to vacate was yet another delay tactic to avoid compliance with the April 30 Subpoena, and that AAST's Fifth Amendment argument was directly contrary to controlling Third Circuit precedent. (June 4, 2020 Letter from the Government to the Honorable Madeline Cox Arleo) (citing *In re: In the Matter of the Grand Jury Empaneled on May 9, 2014 ("May 2015 Grand Jury")*, 786 F.3d 255 (3d Cir. 2015)) (holding that the Fifth Amendment right against self-incrimination does not apply to a corporate defendant, even if the corporate defendant has only one person who functions as the sole shareholder, employee and document custodian).

On June 9, 2020, counsel for AAST filed a motion to quash the April 30 Subpoena, stating, "[t]he Subpoena, while addressed to AAST Holding Corp. ("AAST"), compels Mr. Teo, AAST's only owner, officer, director, and employee, to substantiate various entries on the tax returns of AAST for four years, and for each of those years 'count' and calculate 'average sales price[s] for items relating to entries on those tax returns." Counsel also argued that the April 30 Subpoena required Teo to provide testimony, explain entries on tax returns, prepare tallies to justify specific tax entries, and prepare lists of customers and vendors, all in violation of the Fifth Amendment.

On June 10, 2020, the Government sent a letter to counsel, stating, "[t]o be clear, the [April 30] Subpoena only requests *existing documents and records*," and "[t]he Subpoena does not request the creation of new documents." (Emphasis added). Additionally, on June 10, 2020, the Government responded

to the motion to quash, making clear to counsel, again, that the Government was not seeking the creation of any new documents, and arguing to counsel, again, that AAST had no basis to resist production of the documents, and requesting that the Court order, again, compliance with the April 30 Subpoena.

On June 16, 2020, the Government charged Teo in a one-count criminal complaint with tax evasion, in violation of Title 26, United States Code, Section 7201, for: (1) misreporting the true nature of his personal income from Alpha on his personal tax form; (2) falsely reporting income from Alpha on AAST's corporate tax forms; (3) submitting to his tax preparer false Cost of Goods Sold expenses in order to reduce AAST business income; (4) causing his personal income to be understated by tens of millions of dollars by including AAST's fraudulently reduced net business income on his personal forms; and (5) causing the submission of a personal tax form to the IRS that failed to reflect true income and taxes due.

The next day, June 17, 2020, Judge Arleo held oral argument on the motion to quash, rejecting the same Fifth Amendment arguments that Teo advances again here in Defendant's Motion. During the June 17, 2020 oral argument, Judge Arleo dispatched the Fifth Amendment argument with the swiftness it deserved, stating, "Let's see what we agree on. There is not a Fifth Amendment right attached to these documents as directed to the corporation." (June 17, 2020 Oral Argument Transcript, attached to this brief as Exhibit 3, Tr. 5:6-8). Judge Arleo also rejected counsel's attempts to twist the April 30 Subpoena's requests into requests for oral testimony or the creation of new

documents, which they were not: "No one is suggesting that the custodian needs to testify and create a new document or a narrative or even just a document out of whole cloth." (Exhibit 3, Tr. 5:20-22).

Her Honor continued, "What the Government wants are documents that reflect, for example, the count of the average sales price of each type of goods sold, to the extent they exist." (Exhibit 3, Tr. 5:23-25). Judge Arleo also clarified, "[n]o one's saying you need to go now and recreate — and make up a document to respond to a grand jury subpoena. That has never been a request here." (Exhibit 3, Tr. 7:13-15). And Judge Arleo explicitly addressed, and rejected, counsel's objection to the April 30 Subpoena's use of the word "substantiate," (the same argument riddled throughout Defendant's Motion here) finding that a "common sense" interpretation required the production of "documents that reflect or relate to the gross sales as reported on the tax returns," and "[d]ocuments that reflect or related to the cost of goods sold reported on the tax return." (Exhibit 3, Tr. 10:11-11:17). Finally, Judge Arleo rejected counsel's objections to "a testimonial aspect" of the April 30 Subpoena:

> [Counsel]: There's a testimonial aspect to that to the extent that we're saying that we provided them to the accountant or didn't provide them to the accountant.
>
> The Court: Turn them over. Turn over everything you provided to the accountant.

(Exhibit 3, Tr. 13:4-8).

On June 18, 2020, following oral argument, Judge Arleo issued an order (attached as Exhibit 4 to this brief) denying AAST's motion to quash and ordering AAST to "comply fully with the April 30 Subpoena by producing already existing

documents called for by the April 30 Subpoena, as clarified on the record by the Court no later than June 22, 2020." The Court further ordered "that counsel for AAST indicate in writing to the United States Attorney's Office no later than June 22, 2020 that it has completed its production in response to the April 30 Subpoena and that AAST has no further documents responsive to the April 30 Subpoena to produce."

On June 22, 2020, counsel sent to the Government the following email ("Counsel's June 22, 2020 Email," attached as Exhibit 5 to this brief), which, it appears, is the "statement" and the "oral testimony" at the center of Defendant's entire Motion here:

> Pursuant to the Court's June 18, 2020 Order, please see the attached zip folder. The production is comprised of single page TIFF images, 1 native excel file, and 5 PDFs. The PDF files are password-protected. I will send you the password in a separate email. This completes our production in response to the April 30, 2020 AAST Subpoena, as we are not aware of additional responsive documents over which AAST exercises control.

In the production referenced in Counsel's June 22, 2020 Email, AAST did not provide any documents regarding AAST's Cost of Goods Sold.

On August 10, 2020, Teo was charged, in a nine-count Indictment, with tax evasion and making false tax returns. (ECF No. 10, Crim No. 20-690 (KSH)). Counts 1-3 allege the evasion of tens of millions of dollars in taxes in Teo's personal tax returns for 2016 (Count 1), 2017 (Count 2), and 2018 (Count 3) in violation of Title 26, United States Code, Section 7201. That is, by including false Cost of Goods Sold expenses on AAST's corporate tax returns, and then including AAST's income — as reduced by approximately $165 million from the

false Cost of Goods Sold expenses — on Teo's personal tax returns, Teo understated his personal income in 2016, 2017, and 2018 by a total of approximately $165 million. This resulted in a tax loss of approximately $10 million, $20 million, and $31 million in 2016, 2017, and 2018, respectively, for a total tax loss of approximately $61 million. Counts 4-9 allege that Teo made and subscribed to false tax returns that included false statements as to Cost of Goods Sold in AAST's corporate tax returns for 2016 (Count 4), 2017 (Count 5), and 2018 (Count 6) and false statements as to Teo's total income in his personal tax returns for 2016 (Count 7), 2017 (Count 8), and 2018 (Count 9).

On September 20, 2022, Teo filed the instant motion (ECF No. 40, Crim. No. 20-690), claiming Fifth Amendment protection over, as the Government interprets Defendant's Motion, the following sentence in Counsel's June 22, 2020 Email to the Government regarding the completion of production under the April 30 Subpoena: "This completes our production in response to the April 30, 2020 AAST Subpoena, as we are not aware of additional responsive documents over which AAST exercises control." Based on the misguided premise that counsel's email was somehow protected by *Teo's* Fifth Amendment privilege, and that Teo's Fifth Amendment privilege was violated by compelling counsel to respond whether production under the April 30 Subpoena was complete, Teo now seeks suppression of counsel's email, dismissal of the Indictment, a *Kastigar* hearing, and the production of grand jury transcripts.

For the reasons set forth below, Teo's requests should be denied.

## **LEGAL STANDARD**

The Fifth Amendment provides, "[n]o person . . . shall be [c]ompelled in any criminal case to be a [w]itness against himself." U.S. Const. Amend. V. However, the privilege against self-incrimination is not absolute: "the Fifth Amendment does not independently proscribe the compelled production of every sort of incriminating evidence but applies only when the accused is compelled to make a Testimonial Communication that is incriminating." *Fisher v. United States*, 425 U.S. 391, 408 (1976). The Supreme Court has recognized an act-of-production privilege in which producing documents in response to a subpoena "has communicative aspects of its own, wholly aside from the contents of the papers produced." *Id.* at 410.

But there are exceptions to the act-of-production privilege, including the "collective entity" doctrine, where "an individual cannot rely upon the [Fifth Amendment] privilege to avoid producing the records of a collective entity which are in his possession in a representative capacity, even if these records might incriminate him personally." *Bellis v. United States*, 417 U.S. 85, 88 (1974). "[T]he custodian's act of production is not deemed a personal act, but rather an act of the corporation," and therefore, "[a]ny claim of Fifth Amendment privilege asserted by the agent would be tantamount to a claim of privilege by the corporation — which of course possesses no such privilege." *Braswell v. United States*, 487 U.S. 99, 110 (1988). That is, "a corporation has no Fifth Amendment privilege" and "a corporate custodian . . . may not resist a subpoena for corporate records on Fifth Amendment grounds," even where "their contents tend to

incriminate" the custodian. *Id.* at 99, 105-09, 119 (citing *Wilson v. United States*, 221 U.S. 361, 382 (1911), *Bellis v. United States*, 417 U.S. 85 (1974), *United States v. White*, 322 U.S. 694 (1944), *Essgee Co. of China v. United States*, 262 U.S. 151 (1923), *Dreier v. United States*, 221 U.S. 394 (1911), and *Hale v. Henkel*, 201 U.S. 43 (1906)). In 1957, the Supreme Court held that the issue was "settled":

> It is settled that a corporation is not protected by the constitutional privilege against self-incrimination. A corporate officer may not withhold testimony or documents on the ground that his corporation would be incriminated. *Nor may the custodian of corporate books or records withhold them on the ground that he personally might be incriminated by their production.*

*Curcio v. United States*, 354 U.S. 118, 122 (1957) (citations omitted) (emphasis added).

The Third Circuit has reaffirmed these principles and held that the custodian of records of a one-man professional association could not exercise any Fifth Amendment privilege to withhold corporate documents in response to a grand jury subpoena. *May 2014 Grand Jury*, 786 F.3d at 262. The Third Circuit reasoned that, where a defendant has "taken advantage of the benefits of incorporation," he "may not discard the corporate form simply because he now finds it desirable to do so." *Id.* at 261.

The Third Circuit's ruling is consistent with that of the Ninth Circuit, Second Circuit, First Circuit, and Fourth Circuit on this issue. *See In re Twelve Grand Jury Subpoenas*, 908 F.3d 525, 531 (9th Cir. 2018) *cert. denied*, 140 S. Ct. 289 (2019) ("[T]here are no circumstances under which a records custodian

may resist a subpoena for a collective entity's records on Fifth Amendment grounds."); *In re Grand Jury Subpoena Issued June 18, 2009*, 593 F.3d 155, 158 (2d Cir. 2010) ("'[T]here simply is no situation' in which a corporation can avail itself of the Fifth Amendment privilege." (*quoting In re Two Grand Jury Subpoenae Duces Tecum ("Two Grand Jury Subpoenae")*, 769 F.2d 52, 57 (2d Cir. 1985)); *Amato v. United States*, 450 F.3d 46, 51, 52 (1st Cir. 2006) (reaffirming that "production, including implied authentication, can be required of a corporation through a corporate officer regardless of the potential for self-incrimination," and stating that "the act-of-production doctrine is not an exception to the collective-entity doctrine even when the corporate custodian is the corporation's sole shareholder, officer and employee") (quotations omitted); *United States v. Stone*, 976 F.2d 909, 912 (4th Cir. 1992) (holding that "the district court correctly answered the question left open in *Braswell*" by concluding that a one-person corporation could not assert the Fifth Amendment privilege).

Where oral testimony is concerned, the custodian, if he or she is called for oral testimony, may not be compelled to disclose the "whereabouts" of the documents or to "name the persons in whose possession the missing books may be found," because doing so would "disclose the contents of his own mind." *Curcio*, 354 U.S. at 125, 128.

However, "a corporate officer who has been required by subpoena to produce corporate documents may also be required, by oral testimony, to identify them." *Id.* at 125.; *United States v. Fridman*, 337 F. Supp. 3d 259, 272 (S.D.N.Y. 2018), *aff'd*, 974 F.3d 163 (2d Cir. 2020) ("The law clearly requires the custodian

of the records of a collective entity to provide oral testimony identifying and/or authenticating any documents produced in such a capacity.") (citing *Braswell*, 487 U.S. at 114 and *Curcio*, 354 U.S. at 123-125). "Requiring the custodian to identify or authenticate the documents for admission in evidence merely makes explicit what is implicit in the production itself." *Curcio*, 354 U.S. at 125; *accord Armstrong v. Guccione*, 470 F.3d 89, 99 (2d Cir. 2006) (affirming that the district court's order that defendant either produce the missing corporate property "or demonstrate that compliance is impossible" reflected "a proper understanding" of the Fifth Amendment privilege). Such testimony, which is merely "auxiliary" to the act of production, "is as unprivileged as are the documents themselves." *United States v. Austin-Bagley Corp.*, 31 F.2d 229, 234 (2d Cir. 1929) (Hand, J.).

## ARGUMENT

### I. The Statements in Counsel's June 22, 2020 Email to the Government Were Not Protected by Teo's Fifth Amendment Privilege Against Self Incrimination, and Therefore No Fifth Amendment Violation Has Occurred.

Defendant does not dispute that, "as AAST's sole owner, officer, director, and employee he is required, as its custodian, to produce documents as directed by the Subpoena." (Defendant's Motion at 6). Defendant argues instead, that "[h]e is not, however, required to respond to questions regarding the existence or non-existence of records *substantiating* specific line items on AAST's tax returns, which is precisely what he was compelled to do." (Defendant's Motion at 6) (emphasis in the original). Therefore "the June 18 Order requiring Mr. Teo to comply with the Subpoena by making a written representation to the

Government regarding the non-existence of documents '*substantiating'* such entries violated Mr. Teo's Fifth Amendment rights." (Defendant's Motion at 6) (emphasis in the original). Defendant's argument is meritless.

As a threshold matter, neither the April 30 Subpoena to AAST nor the June 18, 2020 order required oral testimony of any sort, let alone oral testimony by Teo, in his individual capacity, substantiating tax entries. Similarly, neither the April 30 Subpoena nor the June 18, 2020 order required the creation of any new documents, let alone documents created by Teo to substantiate the Cost of Goods Sold entries on AAST's tax returns. The subpoena and the order merely required the production of "already existing documents," and that "*counsel for AAST* indicate in writing . . . that it has completed its production in response to the April 30 Subpoena and that AAST has no further documents responsive to the April 30 Subpoena to produce." (Exhibit 4) (Emphasis added).

And, in response to the June 18, 2020 order, Teo did not provide any oral testimony. Instead, on June 22, 2020, *counsel* emailed the Government, stating,

> This completes our production in response to the April 30, 2020 AAAST Subpoena, as we are not aware of additional responsive documents over which AAST exercises control.

(Exhibit 5). This June 22, 2020 Email did not reference Teo or purport to contain oral testimony by anyone. It was an email from counsel to the Government confirming the completion of a production, and confirming what the production itself made clear, that counsel was not aware of additional responsive documents.

Even if counsel's email were construed to be Teo's oral testimony as custodian for AAST, the Fifth Amendment privilege would not attach, because the statement that counsel was "not aware of additional responsive documents" was merely "auxiliary" to the fact that AAST had not produced the records that the April 30 Subpoena sought. *See Austin-Bagley Corp.*, 31 F.2d at 234 ("testimony auxiliary to the production is as unprivileged as are the documents themselves"). That is, the fact that AAST had completed its production under the subpoena, and the custodian of records was not aware of any additional responsive documents, was no different from failing to produce the documents in the first place. Neither AAST's failure to produce records of Cost of Goods Sold nor counsel's auxiliary representations are protected by the Fifth Amendment.

Additionally, even if Counsel's June 22, 2020 Email were construed to be Teo's oral testimony as custodian for AAST, the statement that "we are not aware of additional responsive documents" is outside the scope of the Fifth Amendment privilege set forth in *Curcio*, on which the Defendant relies heavily. In *Curcio*, the custodian of records, a secretary-treasurer of a local union that was under investigation, was served with subpoenas to produce union books and to testify. *Id.* at 119. The custodian appeared before the grand jury, and testified that the books were not in his possession. *Id.* He refused, however, to answer any questions as to their "whereabouts" on the ground of self-incrimination. *Id.* The custodian was held in contempt, but the Supreme Court reversed, holding that

a corporate custodian need not orally testify as to the "whereabouts" of non-produced records. *Id.* at 128.

But the Court found nothing objectionable regarding the custodian's testimony that the requested documents *were not in his possession*. *See* Curcio, 354 U.S. at 119 ("He testified that he was the secretary-treasurer of Local 269; that the union had books and records; but that they were not then in his possession."). Curcio's testimony was analogous to the representation in Counsel's June 22, 2020 Email in the instant case that the records sought under the April 30 Subpoena were not in AAST's possession: "we are not aware of additional responsive documents over which AAAST exercises control." *See also United States v. Sakai*, No. CIV. 11-00217 LEK, 2011 WL 2581909, at *7 (D. Haw. June 7, 2011), *report and recommendation adopted*, No. 1:11-CV-00217 LEK, 2011 WL 2600553 (D. Haw. June 28, 2011) (finding that custodian, who had already "appeared before the grand jury," "stated that the books were not in his possession," and provided the IRS with an invoice from a shredding company to Allen Sakai's former law firm indicating that the requested documents had been destroyed, could not be compelled to testify as to the documents' "whereabouts"). Therefore, in addition to the fact that Counsel's June 22, 2020 Email did not contain an oral statement by Teo, such an oral statement (even if it were provided in Teo's capacity as custodian of records for AAST) would not be protected by the Fifth Amendment because it did not require the disclosure of "the contents of his own mind." *Curcio*, 354 U.S. at 125, 128. That is, holding out one's hand, and

saying it is empty, does not disclose the contents of one's mind. It states what is auxiliary and obvious: nothing is there.

In support of his argument that the Fifth Amendment protects the statements in Counsel's June 22, 2020 Email regarding AAST, Defendant also relies on *Edgerton* and *DiAntonio*. Unlike the present case, *Edgerton* involved testimony by a taxpayer, in his individual capacity, in person, in a civil contempt hearing. *United States v. Edgerton*, 734 F.2d 913, 921 (2d Cir. 1984). The Second Circuit held that a taxpayer could not be ordered to testify as to the "existence or whereabouts" of certain tax records. *Id.* Here, even if Counsel's June 22, 2020 Email were construed as Teo's oral testimony, the statement is, at best, a statement by AAST's custodian of records, distinguishing *Edgerton*, which involved a taxpayer's statements in his individual capacity.

Defendant's citation to *DiAntonio* is similarly off the mark, and undercuts his argument. *See United States v. DiAntonio*, No. CR 13-0074 (RMB), 2016 WL 3063808 (D.N.J. May 27, 2016). In *DiAntonio*, a custodian of records appeared before the grand jury, invoked the Fifth Amendment, then answered questions regarding a number of topics, including documents produced in response to the Government's subpoenas, whether certain documents were included in real estate contract files, addendums to sales contracts disclosing payments back to sellers, comparisons between documents produced by the custodian's company versus productions by other sources, whether produced files were complete with respect to documents relating to real estate transactions, and why certain records were missing from the custodian's company's production. *Id* at *2-*5.

The court held that there had been no compulsion, and therefore the extreme remedy of dismissal was not appropriate. In particular, the court stated, "the upshot of the Supreme Court's jurisprudence in the context of document custodian examination reveals the malady is not in the examination of custodians (even those under individual investigation), but rather in the *compulsion* of an answer to questions in contravention of the invocation of the Fifth Amendment." *DiAntonio*, 2016 WL 3063808 (emphasis in the original) (citing *Curcio*, 254 U.S. at 126). The court found that questions relating to whether a file was "complete" was a "customary custodian question [that] came at the heel-end of other questions meant to authenticate the documents." *Id.* at *8. The court then held, "where the Defendant answers questions posed to him — *particularly questions that are proper to be asked of a custodian of records* — no prosecutorial misconduct has been committed." *Id.* at *9 (emphasis added).

Therefore, *DiAntonio* misses the mark for two reasons. First, *DiAntonio* involves compulsion of the individual under investigation in his oral, in-person, testimony as custodian of records. Here, Teo's testimony was not requested, let alone compelled. Instead, counsel for AAST was required to answer whether a production was complete, and could have done so without oral testimony of Teo (as, indeed, none was provided). Second, *DiAntonio* indicates that questions regarding the completeness of files under subpoena (even if they are asked of a custodian under investigation) are permissible under the Fifth Amendment because they are "customary" custodian questions. *See id.* at 8.

Nor can Teo claim a Fifth Amendment violation because he, as sole director, shareholder, and employee of AAST, was the only individual who *could have* provided the information that the April 30 Subpoena sought. To do so, Teo would be hiding behind the same corporate shield that the collective entity doctrine prohibits. That is, Teo cannot take advantage of the "benefits of incorporation," only to "discard the corporate form simply because he now finds it desirable to do so." *May 2014 Grand Jury*, 786 F.3d at 262. Indeed, the Second Circuit has explained:

> [E]ven if the situation is unusual and a corporation's custodian of records would incriminate himself if he were to act to produce the company's records, this still does not relieve the corporation of its continuing obligation to produce the subpoenaed documents. In such a situation the corporation must appoint some other employee to produce the records, and if no existing employee could produce records without incriminating himself by such an act, then the corporation may be required to produce the records by *supplying an entirely new agent* who has no previous connection with the corporation that might place him in a position where his testimonial act of production would be self-incriminating. There simply is no situation in which the fifth amendment would prevent a corporation from producing corporate records, for the corporation itself has no fifth amendment privilege.

*In re Two Grand Jury Subpoenae Duces Tecum ("Two Grand Jury Subpoenae")*, 769 F.2d 52, 57 (2d Cir. 1985) (citations omitted) (emphasis added). If AAST, Teo, or counsel for both had reservations about the source of the information in Counsel's June 22, 2020 Email, they could have responded to the April 30 Subpoena by supplying "an entirely new agent who has no previous connection with the corporation." *Id.* Accordingly, the Fifth Amendment does not protect

Counsel's June 22, 2020 Email, and Defendant's Motion, based entirely on this flawed premise, should be denied.

## II. Because There Has Been No Fifth Amendment Violation, Suppression, Dismissal of the Indictment, a *Kastigar* Hearing, and the Disclosure of Grand Jury Transcripts Are Not Warranted.

### A. Suppression of the Contents of Counsel's June 22, 2020 Email to the Government Is Not Warranted.

Defendant argues, "Mr. Teo's Fifth Amendment rights were violated when he was required to comply with the Subpoena which, in turn, required him to make incriminating statements to the Government after asserting his right to refuse to do so," and therefore, "Mr. Teo's statement that he did not possess documents responsive to the Subpoena's demand for records 'substantiating' the Cost of Goods Sold on AAST's tax returns, must be suppressed." (Defendant's Motion at 8). Curiously, despite the fact that Teo has never provided oral testimony in this case, he also claims that he "*testified* that he did not possess records substantiating line items on AAST's tax returns, including its Cost of Goods Sold." (Defendant's Motion at 8) (Emphasis added).[3]

As set forth above, there has been no Fifth Amendment violation; therefore, suppression is not warranted. Tellingly, in support of his suppression argument, Defendant does not cite any authority factually similar to his own case. Instead, Defendant cites canonical Supreme Court decisions that stand for the bedrock proposition that evidence obtained in violation of a constitutional right must be

[3] For purposes of its response to Defendant's Motion, the Government presumes that Defendant's reference to "testified" is again to Counsel's June 22, 2020 Email, discussed in detail above.

suppressed. (Defendant's Motion at 7) (citing *Mapp v. Ohio*, 367 U.S. 643 (1961); *Weeks v. United States*, 232 U.S. 383 (1914); *Miranda v. Arizona*, 384 U.S. 436 (1966)). But these controlling decisions do not apply here, where, as set forth above, there has been no violation of Defendant's Fifth Amendment privilege.

Even if there had been a Fifth Amendment violation, and suppression were warranted, it is unclear exactly what would need to be suppressed, and what that would mean for trial. In any event, as set forth above, controlling Fifth Amendment precedent supports the use of statements in Counsel's June 22, 2020 Email in any number of ways, subject, of course, to the Federal Rules of Evidence, including:

- Law enforcement testimony regarding the service of the April 30 Subpoena on AAST and how AAST never produced materials related to Cost of Goods Sold;
- AAST's admission that AAST was not aware of any additional documents responsive to the April 30 Subpoena;
- Direct examination of a custodian of records for AAST regarding receipt of the April 30 Subpoena, what was produced, what was not in AAST's possession, and authentication of records.

*See, e.g., Braswell*, 487 U.S. at 114 and *Curcio*, 354 U.S. at 123-125.

**B. Dismissal of the Indictment Is Not Warranted.**

Defendant argues, "[t]o obtain the Indictment, the Government relied heavily, if not exclusively, on the statement improperly compelled from Mr. Teo that he did not have records 'substantiating' the Cost of Goods Sold line-item on AAST's tax returns and, therefore, the Court should dismiss the Indictment or,

in the alternative, conduct a *Kastigar* hearing to determine if the Indictment should be dismissed." (Defendant's Motion at 9). Defendant argues, "the Grand Jury compelled Mr. Teo to answer questions as to whether he had records '*substantiating'* AAST Cost of Goods Sold line-item entries on its tax returns." (Defendant's Motion at 9) (emphasis in the original) (citing the April 30 Subpoena). Defendant's motion to dismiss the Indictment should be denied because its Fifth Amendment premise is flawed. The argument doesn't get off the ground.

District Courts "have the power to dismiss an indictment based on prosecutorial misconduct." *United States v. Breslin*, 916 F. Supp. 438, 441 (E.D. Pa. 1996). "Nevertheless, this is an extreme remedy and, correspondingly, a very demanding standard." *DiAntonio*, 2016 WL 3063808, at *5 (citing *United States v. Martino*, 825 F.2d 754, 759 (3d Cir. 1987)). Dismissal of an indictment is "the most drastic remedy." *United States v. Morrison*, 449 U.S. 361, 365 n.2 (1981). "[D]ismissal of the indictment is appropriate only if it is established that the violation substantially influenced the grand jury's decision to indict, or if there is grave doubt that the decision to indict was free from the substantial influence of such violations." *Bank of Nova Scotia v. United States*, 487 U.S. 250, 256 (1988) (quotations omitted).

Here, again, Defendant tries to recast the facts to drum up a Fifth Amendment violation where none exists. The April 30 Subpoena did not ask any questions of the Defendant, and Defendant was not compelled to answer any questions. As set forth above, the April 30 Subpoena asked *AAST* for *records*

that already existed. To the extent that *counsel* asked Teo questions in his capacity as custodian for AAST, and *counsel* reported Teo's answers in Counsel's June 22, 2020 Email to the Government, that was counsel's choice. As set forth above, AAST could have responded to the April 30 Subpoena by putting forth an "entirely new agent who has no previous connection with the corporation." *Two Grand Jury Subpoenae*, 769 F.2d at 57.

Here, there has been no Fifth Amendment violation whatsoever, so the drastic remedy of dismissal would be entirely inappropriate.

**C. A *Kastigar* Hearing Is Not Warranted.**

Defendant argues, "[t]here can be no question that Mr. Teo, having had a statement compelled from him without immunity, after asserting his Fifth Amendment rights, is entitled to the same protection," and therefore, the "Government must establish at the hearing that it has made *no use* of the compelled statement." (Defendant's Motion at 10, 11) (emphasis in the original). As with Defendant's other arguments, this one should be rejected because its basis is flawed. The Government never requested a statement by Teo, Teo was never compelled to make any statement, and the substance of Counsel's June 22, 2020 Email is not protected by the Fifth Amendment, and therefore Defendant's motion should be denied.

"As the Supreme Court made clear in *Kastigar*, the protection against the use of immunized testimony or its derivatives reflects 'a rational accommodation between the imperatives of the [Fifth Amendment privilege against compulsory self-incrimination] and the legitimate demands of government to compel citizens

to testify.'" *United States v. Bagdis*, 488 F. App'x 593, 597 (3d Cir. 2012) (quoting *Kastigar v. United States*, 406 U.S. 441, 445-46 (1972)). "Once a defendant demonstrates that he has testified, under a state grant of immunity, to matters related to the federal prosecution, the federal authorities have the burden of showing that their evidence is not tainted by establishing that they had an independent, legitimate source for the disputed evidence." *Kastigar*, 406 U.S. at 460. That is, at a *Kastigar* hearing, the prosecution must establish by a preponderance of the evidence that the government's evidence comes from proper nonimmunized sources. *United States v. Baca*, 447 F. Supp. 3d 1149, 1165 (D.N.M. 2020) (citing Black's Law Dictionary (10th ed. 2014)), *aff'd sub nom. United States v. Cordova*, 25 F.4th 817 (10th Cir. 2022).

Where, as here, there was no compulsion of Teo's individual testimony and no Fifth Amendment protection over Counsel's June 22, 2020 Email, there is no reason for a *Kastigar* hearing. This is especially true where the Indictment against Defendant was the result of a lengthy investigation, involving over 65 subpoenas, tens of thousands of documents, and interviews and testimony from multiple witnesses.

### D. Counsel's Request for the Production of Grand Jury Transcripts Should Be Denied.

As with other requests in Defendant's Motion, Defendant's demand for the production of grand jury transcripts is based on the flawed contention that a Fifth Amendment violation has occurred. Accordingly, Defendant's request should be denied.

The Government is, of course, aware of its ongoing discovery obligations, and the parties have agreed, as the Court is aware, to exchange any material under the Jencks Act, 18 U.S.C. § 3500, and for the Government to produce any material under *Giglio v. United States*, 405 U.S. 150 (1972), a month before the start of trial. (ECF 24, Crim. No. 20-690).

## III. The Defense Is Required to Produce the Documents that It Referenced in Its June 22, 2022 Meeting with the Government.

The Government has met its discovery obligations under Rule 16, producing to the Defendant tens of thousands of records, but has not received reciprocal discovery under Rule 16(b)(1).

Rule 16 requires the Defendant to provide items "within the defendant's possession, custody, or control" that "defendant intends to use . . . in the defendant's case-in-chief at trial."

On June 22, 2022, the Government met with counsel for Defendant, who set forth the outlines of a defense that Teo will advance at trial. During the meeting, the Government was presented with what counsel said was a small sample (approximately four documents) of a vast set of documents that prove Defendant's innocence. But the Government has not been provided with those documents, which are, presumably, in Defendant's custody and control and on which counsel stated Teo would rely at trial. Here, the Government requests the production of that vast set of documents.

**CONCLUSION**

For the reasons stated above, the Court should deny Teo's motions in their entirety, and the Government respectfully requests that the Court grant the Government's motion for reciprocal discovery under Rule 16(b)(1).

Respectfully submitted,

PHILIP R. SELLINGER
United States Attorney

By: *s/Ari B. Fontecchio*
ARI B. FONTECCHIO
BLAKE A. COPPOTELLI
Assistant United States Attorneys

Dated: Newark, New Jersey
October 11, 2022