**STERN KILCULLEN & RUFOLO, LLC**
Mark W. Rufolo, Esq.
Florham Park, New Jersey 07932
Telephone: 973-535-1900
Facsimile: 973-535-9664
mrufolo@sgklaw.com
*Attorneys for Defendant Alfred Teo, Sr.*

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>Plaintiff,<br>v.<br>ALFRED TEO, SR.,<br>Defendant. | Criminal No. 2:20-690 (KSH)<br><br>**(Document Electronically Filed)**<br><br>**Oral Argument is Requested** |

**REPLY BRIEF OF DEFENDANT, ALFRED TEO, IN FURTHER SUPPORT OF HIS MOTION TO SUPPRESS THE STATEMENT COMPELLED FROM HIM IN VIOLATION OF HIS FIFTH AMENDMENT RIGHTS AND TO DISMISS THE INDICTMENT, WHICH WAS PROCURED IN VIOLATION OF HIS FIFTH AMENDMENT RIGHTS OR, IN THE ALTERNATIVE, TO CONDUCT A PRE-TRIAL *KASTIGAR* HEARING**

**TABLE OF CONTENTS**


**PRELIMINARY STATEMENT** .......... **1**

**BRIEF REPLY TO GOVERNMENT BACKGROUND STATEMENT** .......... **2**

**ARGUMENT** .......... **3**

I. Mr. Teo's Fifth Amendment Privilege was Implicated Because the Subpoena Required Mr. Teo to Answer the Government's Question as to Whether or Not He Had Documents "Substantiating" Entries on AAST's Tax Returns, and His Rights Were Violated When He was Compelled to Fully Comply with the Subpoena's Demand to Provide That Information and, Therefore, His Response Must Be Suppressed. .......... 3

II. Because the Government *De Facto* Admits that it Offered Mr. Teo's Compelled Response to the Grand Jury, And it is Inconceivable that it Did Not, the Grand Jury Transcripts Should Be Produced so that Mr. Teo's Motions for Dismissal or a *Kastigar* Hearing Can Be Fully Evaluated. .......... 7

III. The Defense Is Not Required to Produce Documents Referenced During Settlement Discussions As Evidence of Mr. Teo's Lack of Willful Intent Until Mr. Teo Decides That He Intends to Use Such Documents in His Case-In-Chief. .......... 8

**CONCLUSION** .......... **12**

# TABLE OF AUTHORITIES

**Cases**

*Berger v. United States*, 295 U.S. 78 (1935) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Braswell v. United States*, 487 U.S. 99 (1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Cheek v. United States*, 498 U.S. 192 (1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Curcio v. United States*, 354 U.S. 118 (1957). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5–6

*Fisher v. United States*, 425 U.S. 391 (1976) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5-6

*In re Grand Jury Matter (Brown)*, 768 F.2d 525 (3rd Cir. 1985) . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Kastigar v. United States*, 406 U.S. 441 (1972). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ..... . 6

*United States v. Austin-Bagley Corp.*, 31 F.2d 229 (2d Cir. 1929) . . . . . . . . . . . . . . . . . . . . . . 5–6

*United States v. Fisher*, 500 F.2d 683 (3rd Cir. 1974) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

**Federal Rules of Criminal Procedure**

F.R.Crim.P. 16(b)(1)(A)(ii) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

**Federal Rules of Evidence**

F.R.E. 410 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

## PRELIMINARY STATEMENT

While asserting that Alfred Teo made no compelled statements, the Government simultaneously contends that it has a right to "use [the] statements in Counsel's June 22, 2020 Email in any number of ways," including by offering the "***admission*** that AAST was not ***aware*** of additional documents ***responsive*** to the April 30, 2020 Subpoena" [the "Subpoena"]. ECF 42 at 25 (emphasis added). It is thus plain that the Government used the compelled "***admission***" from counsel that Mr. Teo could not ***substantiate*** the Cost of Goods Sold entries on AAST's tax returns to charge Mr. Teo with criminal tax fraud for the years 2016 through 2018. The Government not only does not deny but *de facto* acknowledges that it used the information, even while refusing to release its presentation to the Grand Jury.

The core allegation in each count against Mr. Teo is that he feloniously reported deductions for Cost of Goods Sold that did not exist on tax returns. The Government's principal evidence against Mr. Teo, who did not prepare the returns, is his "***admission***" to the Grand Jury that he cannot substantiate these line entries on AAST's returns. The Government needed and then demanded that "***admission***" from Mr. Teo because his accountants—upon which he relied—validated each and every one of those returns, ***before*** he filed them, and then signed each as correct.

In short, the Government compelled Mr. Teo's "***admissions***" ***about AAST's tax returns*** and, by its own *de facto* admission, used them to ***charge Mr. Teo*** with making false statements on those returns. At a bare minimum, Mr. Teo is entitled to see if the compelled "***admissions***" influenced the Grand Jury's decision to indict. While there is every reason to grant his request to inspect the minutes, there is ***no*** reason to keep Grand Jury testimony in this matter secret—the investigation has long since been completed, allegations made public, and the testimony of the

agent will eventually be turned over under Jenks if he testifies. Therefore, the Government should be compelled to produce the Grand Jury transcripts.

It is also noteworthy that after making this motion, Mr. Teo was able to obtain from the Government the *ex parte* submission to the Grand Jury judge in 2020, which it used to obtain the order requiring Mr. Teo to "***substantiate***" entries for Cost of Goods Sold on the tax returns or admit that he could not do so. Interestingly, although unknown to Mr. Teo's counsel prior to argument before the Grand Jury judge, in its *ex parte* submission to the Grand Jury judge, the Government referred to the demands of the Subpoena on four separate occasions, but on each of those occasions it mischaracterized the demand by saying that the Subpoena demanded documents "supporting" rather than "substantiating" the line entries on AAST's tax returns. ECF 42-1 at 6, ¶ 4, 7, ¶ 11. In ruling in favor of the Government, it is likely that the Grand Jury judge took as accurate the Government's changed description of what the Grand Jury subpoena compelled, without studying the words in the lengthy subpoena duces tecum.

The precise question before this Court is whether the Government has the authority to compel a taxpayer or his attorney to appear before a Grand Jury and require them to "***substantiate***" line by line entries on a tax return that was filed under penalty of perjury and use the compelled statements as "***admissions***." In this case the Government not only compelled statements from the taxpayer's attorney, it claims they can use them.

## BRIEF REPLY TO GOVERNMENT BACKGROUND STATEMENT

The Government's Background Section (ECF 42 at 7-13) and attached exhibits (ECF 42-1) only emphasize the urgency and need it displayed to obtain, prior to returning the Indictment, an "***admission***" that Mr. Teo did not have documents "***substantiating***" the Cost of Goods Sold entries on AAST's tax returns. During a brief two-week period at the beginning of a global

pandemic, with all of the attendant difficulties, the Government was relentless in its pursuit of Mr. Teo's "***admission***." And there was good reason for its urgency. The Government has been well aware from the outset of the Grand Jury investigation that every entry on the AAST tax returns and Teo's personal returns was placed there based on the advice from and with the approval of a reputable accounting firm that had not only been handling the Teo accounts for ***forty years,*** but had served as his principal financial advisor. There is reason to believe that representatives of that accounting firm had been interviewed by the Government and denied any wrongdoing by Teo ***before*** the Government served the Subpoena on AAST and, thereby, sought admissions from him.

## ARGUMENT

### I. Mr. Teo's Fifth Amendment Privilege was Implicated Because the Subpoena Required Mr. Teo to Answer the Government's Question as to Whether or Not He Had Documents "Substantiating" Entries on AAST's Tax Returns, and His Rights Were Violated When He was Compelled to Fully Comply with the Subpoena's Demand to Provide That Information and, Therefore, His Response Must Be Suppressed.

Mr. Teo does not complain about AAST having to produce documents and this motion has nothing to do with the Act of Production doctrine. The Government, by the terms of the Subpoena, required a testimonial answer as to whether or not Mr. Teo had documents "***substantiating*** the Cost of Goods Sold reported on AAST's 1120-S tax return[s]." The Government did not demand ***only*** documents—it demanded substantiation for specific line entries on tax returns for which Mr. Teo was the responsible party. And it also knew that AAST was (and is) not capable of responding to the Government's demand—only Mr. Teo could do so because he is the only officer and employee of AAST.

The Indictment itself, and the Government's own summary of the charges, makes clear that its focus was not on AAST, but rather on Mr. Teo. Knowing that AAST's tax returns were prepared by Teo's accountants, ***the Government needed Mr. Teo to admit there were no documents***

***substantiating the expenses taken for Cost of Goods Sold on AAST's returns***. *See* ECF 10 at 4-5, ¶¶ 7-8; 9, ¶ 6 (Indictment charges that Teo willfully falsified AAST's tax returns by reporting false Cost of Goods Sold expenses because AAST did not have Cost of Goods Sold.); ECF 42 at 12-13.

And that is precisely what the Subpoena demanded. Mr. Teo was compelled, over his objection, to "comply fully" with the Subpoena and provide ***substantiation*** for tax return entries or admit that he had none. ECF 40-2, Ex. 3 (June 18, 2020 Order). It is no different than if Mr. Teo had appeared before the Grand Jury and was forced to admit, in response to the Government's question, that he had no documents "***substantiating***" these line-item entries on AAST's tax returns. The Subpoena posed a question that Mr. Teo was compelled to answer, and it is inconceivable that his response was not used by the Government against him personally. Of course, if that conclusion is incorrect, it can be easily dismissed by an examination of the Grand Jury minutes. But the Government has refused to provide them.

Therefore, the Government's reliance on the act of production cases is entirely misplaced. *See e.g., Braswell v. United States*, 487 U.S. 99 (1988) (a custodian does not come within the act of production exception because the custodian's act of production is not deemed a personal act, but rather an act of the corporation, which does not have a Fifth Amendment privilege).[1] Nor does the issue raised by Mr. Teo have anything to do with the Government "[r]equiring the custodian

[1] It is noteworthy, however, that in *Braswell*, the Court recognized that because the act is deemed one of the corporation and not the individual, the Government may make no evidentiary use of the "individual act" against the individual. This means the Government is not permitted to introduce into evidence the fact that the subpoena was served upon, and the corporation's documents were delivered by, one particular individual (the custodian/defendant) to show a "nexus" between the defendant and the documents. *Braswell*, 487 U.S. at 118. The Government has admitted that it used "AAST's admission that AAST was not aware of any additional document responsive to the [Subpoena]" (ECF 42 at 25), and it is obvious from the Indictment that the admission was used against Mr. Teo, personally.

to ***identify*** or ***authenticate*** the documents," which it is permitted to do. ECF 42 at 16–17. The Subpoena here did not simply force the production of documents, but rather the "***admission***" that Teo could not produce records "***substantiating***" specific line items on AAST's tax returns.

Ultimately, the Government relies on the naked and unsupported assertion that "Teo did not provide any oral testimony." ECF 42 at 18. As we have demonstrated, this simply is incorrect. Mr. Teo was compelled to make an "***admission***" that he did not have documents "***substantiating***" the Cost of Goods Sold line-item entries on AAST's tax returns and the Government claims it has the right to use that ***"admission"*** against him. *See e.g., Fisher v. United States*, 425 U.S. 391, 410 (1976) (recognizing that "whether the tacit averments of the taxpayer are 'testimonial' and 'incriminating' for purposes of applying the Fifth Amendment" may depend on the facts and circumstances of particular cases or classes thereof).

In its effort to justify compelling and using Mr. Teo's "***admission***," the Government asserts that "[e]ven if counsel's email were construed to be Teo's oral testimony…the Fifth Amendment would not attach, because the statement…was merely 'auxiliary' to the fact that AAST had not produced the records the [Subpoena] sought." ECF 42 at 19, *citing United States v. Austin-Bagley Corp.*, 31 F.2d 229 (2d Cir. 1929). The Government's reliance on *Austin-Bagley* misses the mark.

*First,* the Government ignores that the Supreme Court has expressly held that the *Austin-Bagley* exception "and cases following it" do not apply when the Government seeks "to compel the custodian ***to do more than identify*** documents already produced." *Curcio v. United States,* 354 U.S. 118, 125 (1957) (emphasis added). Instead, when the Government seeks to compel "the whereabouts of books and records which he has failed to produce," such testimony is "more than 'auxiliary to the production'" and more than requiring the custodian to "identify or authenticate the documents." *Id.*, *quoting Austin-Bagley*, 31 F.2d at 234. The compelled representation from

Mr. Teo, as communicated by his attorneys, not only cannot be classified as "auxiliary" to the document production, it goes even further than indicating the whereabouts of documents, as was the case in *Curcio*. They were "***admissions***" that there were no documents to ***substantiate*** specific deductions on AAST's tax returns.

*Second,* the Third Circuit Court has repeatedly questioned the validity of *Austin-Bagley's* holding in light of more recent decisions, such as *Curcio*. *See e.g.*, *In re Grand Jury Matter (Brown)*, 768 F.2d 525, 526 (3rd Cir. 1985) ("The *Austin-Bagley* exception to the privilege against self-incrimination has never been adopted by this court or the Supreme Court. Such an exception is, moreover, inconsistent with the Supreme Court's recent treatment of the privilege."); *United States v. Fisher*, 500 F.2d 683, 694 (3rd Cir. 1974) ("In the light of *Schmerber* and *Couch* I question whether *Austin-Bagley* is authoritative today.") (Gibbons, J., concurring), *aff'd*, *Fisher v. United States*, 425 U.S. 391 (1976).

Thus, the *Austin-Bagley* exception does not apply and the Government has no justification for compelling an "***admission***" from Mr. Teo that he had nothing "***substantiating***" entries on AAST tax returns. Mr. Teo was compelled to be a witness against himself and, therefore, his Fifth Amendment rights were violated. The Government's overly simplistic view that "Teo has never provided oral testimony in this case" (ECF 42 at 24) misses the point entirely. The representation compelled from Mr. Teo, as communicated by his attorneys and used as an "***admission***" against him, must be suppressed.

The only questions remaining are how the Government used that information and if their case against Mr. Teo is, therefore, tainted in violation of *Kastigar v. United States*, 406 U.S. 441 (1972).

## II. Because the Government *De Facto* Admits that it Offered Mr. Teo's Compelled Response to the Grand Jury, And it is Inconceivable that it Did Not, the Grand Jury Transcripts Should Be Produced so that Mr. Teo's Motions for Dismissal or a *Kastigar* Hearing Can Be Fully Evaluated.

Clearly, the Government presented to the Grand Jury the information Alfred Teo was compelled to provide. It is inconceivable that the Government took the measures it did to obtain evidence in the name of the Grand Jury and then failed to present it. Furthermore, the allegations of the Indictment confirm that it must have presented this evidence. We made this precise point in a letter to the Government requesting that it produce the transcripts for any witness who testified before the Grand Jury regarding the lack of records "'***substantiating***'…the Cost of Goods Sold reported by AAST on its 1120-S tax returns," including the testimony of the assigned IRS agent. Ex. A (10/6/2022 letter to the Government) (emphasis in original).

The Government ignored our request, except by attempting to justify the use of the "***admission***" it obtained from Mr. Teo by way of the June 22, 2020, email. As already noted, the Government asserts in its Opposition that it was permitted to "use [the] statements in Counsel's June 22, 2020 Email in any number of ways," including ***by offering the "admission that AAST was not aware of additional documents responsive to [the Subpoena]***." ECF 42 at 25 (emphasis added). As is obvious, AAST has been charged with nothing and, moreover, the Government clearly targeted Mr. Teo personally from at least as early as it served the Subpoena.

The Government should be required to produce to the Court and Mr. Teo, the Grand Jury testimony regarding the lack of records "'***substantiating***' the Cost of Goods Sold reported by AAST on its 1120-S tax returns," and any other use of Counsel's June 22, 2020, email to which it refers in its opposition papers.

### III. The Defense Is Not Required to Produce Documents Referenced During Settlement Discussions As Evidence of Mr. Teo's Lack of Willful Intent Until Mr. Teo Decides That He Intends to Use Such Documents in His Case-In-Chief.

The Government uses Mr. Teo's request for the Grand Jury transcripts, which are obviously relevant to his motion for a *Kastigar* hearing, to make its own separate non-scheduled motion for discovery of documents and materials that Mr. Teo ***may use*** in his case-in-chief to demonstrate that he did not knowingly and willfully violate the tax laws. Setting aside whether such a motion is appropriate in the context of its opposition to Mr. Teo's motion,[2] the Government relies upon statements made by defense counsel during confidential settlement discussions conducted nearly four months ago. The Government has never made this request directly to counsel. F.R.E. 410 is intended to protect statements made during plea discussions.[3] At a minimum, the Government has violated the spirit of Rule 410.

Moreover, the Government has not provided the Court with a full account of what actually transpired. *First,* it was the Government that invited Mr. Teo's attorneys to a meeting to discuss a written plea offer made by it to Mr. Teo. *More importantly*, Mr. Teo's presentation was to the Government's case-in-chief.

The Government's offer was to a single three-year count, thereby considerably limiting any potential prison sentence in what the Government describes as an "evasion of tens of millions

[2] The Government camouflaged its motion for an Order granting reciprocal discovery as an exhibit to its opposition to Mr. Teo's motion (ECF 42-2) and, thereby, unilaterally limited Mr. Teo's response time, rather than docketing a separate motion with a separate briefing schedule.

[3] F.R.E. 410 provides in relevant part that "In a civil or criminal case, evidence of the following is not admissible against the defendant who...participated in the plea discussion: … (4) a statement made during plea discussions with an attorney for the prosecuting authority if the discussions did not result in a guilty plea…"

of dollars in taxes" (ECF 42 at 12), and even according Teo the right to argue for no prison sentence.

In rejecting the offer, counsel for Mr. Teo sought to show that the offer, although generous on its face, was not reasonable because it would be clear on the Government's own case that Teo had relied on professional accountants. As the Indictment reflects, Teo utilized the services of a certified public accounting firm to prepare his taxes, including his personal returns and those of AAST. There can be no doubt that the Government has interviewed these accountants. Counsel for Teo attempted to show the Government that Teo's accountants, particularly the late senior partner and a second partner who we believe to be a likely Government witness, together guided ***every*** financial and tax related action taken by Mr. Teo. In fact, the accountants had access to all of Teo's financial records. In short, we submitted that the accountants were involved in every aspect of Mr. Teo's business and personal financial life, and created and knew well about AAST. We provided the prosecutors with several documents to demonstrate that ***their own witness***, on cross-examination ***during the Government's case***, would have to describe the depth of the accountants' knowledge of Mr. Teo's finances, including those of AAST, and responsibility for preparing his tax returns. We placed emphasis on one document showing that the accountants selected and worked directly on financial planning matters at the very same time they worked to set up AAST, a strong indicator of the relationship between the planning and AAST at AAST's inception. We submitted that whether the professional advice justifying the Cost of Goods Sold expenses on AAST's tax returns was correct or flawed, the accountants must have believed it was correct, and Mr. Teo relied upon that advice.[4]

---

[4] We have also explained to the Government that Mr. Teo retained new accountants before he was charged, who looked closely at the AAST issue and determined, after months of analysis, that the

These proffered documents, to be used on the Government's own case, would show the extent of Mr. Teo's good faith reliance on his accountants pursuant to the pronouncement in *Cheek v. United States*, 498 U.S. 192 (1991) (A good-faith misunderstanding of the law or a good-faith belief that one is not violating the law negates willfulness, whether or not the claimed belief or misunderstanding is objectively reasonable, because statutory willfulness protects the average citizen from prosecution for innocent mistakes made due to the complexity of the tax laws).[5] Mr. Teo submitted to the Government that under these, and other circumstances relating to Mr. Teo's age and health, he would not subject himself to the prospect of incarceration.

We note that the Government denies possessing any ***Brady*** material. We, of course, are inclined to take the Government at its word. Nevertheless, it seems appropriate to remind the Government that any interviews with Teo's accountants would fall within ***Brady*** to the extent they reveal that Teo relied on his accountants in establishing AAST, and in signing the tax returns of AAST and his own.

Putting aside the Government's use of confidential settlement discussions, the rules do not support the Government's demand for documents at this juncture. Any obligation of Mr. Teo to

---

prior accountants were incorrect, and that the Government was owed additional tax. Mr. Teo immediately paid approximately $71.5 million, representing taxes and interest.

[5] As we have explained to the Government, Teo's good faith reliance on his accountants, which will be established on the Government's case-in-chief, will entitle him to a jury instruction regarding the Defense of Reliance on Advice, which is consistent with *Cheek*. *See e.g.* Modern Federal Jury Instructions-Criminal, Instruction 59-9 (2022), which provides in relevant part that:

> The defendant has introduced evidence showing that he consulted with an accountant (or attorney) prior to the preparation of the tax return in question, and that the return was prepared pursuant to that advice. If you find that the defendant sought the advice of an accountant whom he considered competent, and made a full and accurate report to that accountant of all the material facts available to him, and acted strictly in accordance with the accountant's advice without having any reasonable basis to believe that the advice was incorrect, then you must find the defendant not guilty.

produce documents to the Government is dependent upon, among other things, whether "the defendant intends to use the item in the defendant's case-in-chief at trial." F.R.Crim.P. 16(b)(1)(A)(ii). As Mr. Teo has previously advised the Government, he "has not yet made any determination about what documents he intends to use in his case-in-chief." Ex B (10/29/2020 letter to the Government). The documents provided to the Government during the settlement discussion meeting, and others like them, will be used on cross-examination during the Government's case-in-chief. Whether Mr. Teo will seek to offer testimony and/or evidence in his case-in-chief will depend upon many things that have yet to occur, including our receipt of *Giglio* and Jencks material that is not due from the Government until one month prior to trial. The Government has the burden of proving Mr. Teo's guilt beyond a reasonable doubt, and Mr. Teo has every right to rely upon that burden before deciding what, if any, evidence to offer in his case-in-chief.

Perhaps most importantly, the Government's reference to confidential settlement discussions is merely the latest example of inappropriate Government actions. We have not yet addressed the footnote to the first sentence of its "Background" section, in which the Government inappropriately references Mr. Teo's guilty plea entered over sixteen years ago. ECF 42 at 7, fn 2. While we understand and appreciate that this information is public, not to mention that the Court may have an independent recollection of the event, the reference is ***clearly*** and ***totally*** ***irrelevant*** and ***gratuitous*** in the context of Mr. Teo's motion to inspect the Grand Jury minutes and/or dismiss the indictment, and the Government's opposition thereto. What possible relevance could that footnote have to those motions, except to attempt to improperly prejudice Mr. Teo. As Justice Sutherland so profoundly wrote over eighty-five years ago:

> …in a criminal prosecution is not that [the U.S. Attorney as the representative of a sovereignty] shall win a case, but that justice shall be done…He may

> prosecute with earnestness and vigor -- indeed, he should do so. But, while he may strike hard blows, he is not at liberty to strike foul ones.

*Berger v. United States*, 295 U.S. 78, 88 (1935).

The Government's motion for an Order requiring Mr. Teo to produce the documents referenced during the June 22, 2022, settlement discussions with the Government should be denied.

## CONCLUSION

For the reasons set forth in our opening brief and herein, Mr. Teo's motions to suppress the statement compelled from him in violation of this Fifth Amendment rights, and to dismiss the indictment or, in the alternative order the Government to produce the Grand Jury transcripts and conduct a pre-trial *Kastigar* hearing, should be granted, and the Government's motion for reciprocal discovery should be denied.

**STERN KILCULLEN & RUFOLO, LLC**
*/s/ Mark W. Rufolo*
Herbert J. Stern, Esq.
Mark W. Rufolo, Esq.
325 Columbia Turnpike
Florham Park, New Jersey 07932
Telephone: 973-535-1900
Facsimile: 973-535-9664
mrufolo@sgklaw.com
*Attorneys for Defendant Alfred Teo, Sr.*

Dated: October 21, 2022

# EXHIBIT A

# STERN KILCULLEN & RUFOLO, LLC

COUNSELORS AT LAW

HERBERT J. STERN*
KEVIN M. KILCULLEN+
JOEL M. SILVERSTEIN*
MARK W. RUFOLO*
MICHAEL DINGER*
JOHN E. TRAVERS^
KENNETH DEL VECCHIO**
ROBERT W. FERGUSON~
EDWARD B. BECKER*
KELLIANNE GREENWOOD<

ALEXANDER P. FERSA+
VINCENT COSENZO~

325 COLUMBIA TURNPIKE
SUITE 110, P.O. BOX 992
FLORHAM PARK, NEW JERSEY 07932-0992
TEL: 973-535-1900 * FAX: 973-535-9664

214 BRAZILIAN AVENUE
SUITE 270
PALM BEACH, FLORIDA 33480
561-721-6525

+Admitted in NJ and FL
*Admitted in NJ and NY
^Admitted in NJ, NY, PA and FL
~Admitted in NJ, NY and FL
<Admitted in NJ, NY and CT
**Admitted in NJ and PA

October 6, 2022

Ari Fontecchio, A.U.S.A.
Blake Coppotelli, A.U.S.A.
U.S. Attorney's Office
70 Broad Street
Newark, New Jersey 07102

**Re: U.S. v. Alfred Teo, Sr.**
**Crim. No. 20-690 (KSH)**

Dear Messrs. Fontecchio and Coppotelli,

Please produce to us the Grand Jury transcripts for any witness who testified before the Grand Jury regarding documents or records, or the lack of records, "***substantiating***" or "***supporting***" the Cost of Goods Sold reported by AAST on its 1120-S tax returns. This includes, but is not limited to, the Grand Jury testimony of IRS Special Agent Carlo Nastasi. Any such testimony is directly relevant to Mr. Teo's pending motions to suppress, dismiss the Indictment or, in the alternative, conduct a *Kastigar* hearing (ECF 40). The Government, itself, acknowledged this when it made its motion to unseal its *ex parte* application "in order to respond to Teo's motions."

In its June 1, 2020 *ex parte* motion, the Government expressly represented that AAST had not produced "documents ***supporting*** the Cost of Goods Sold reported by AAST on its 1120-S tax returns" (Declaration of Vijay Dewan, Misc. No. 18-245 at ¶ 11), and moved the Court to compel AAST to comply with the Grand Jury's demand. *Id.* at ¶ 1. The Government also declared that the material it sought was relevant to the Grand Jury investigation (*id.* at ¶ 13), thereby revealing its intention to offer the sought-after evidence to the Grand Jury. In fact, the Government went so far as to obtain an order compelling Mr. Teo to represent that AAST had no documents responsive to the Subpoena if that were the case. June 1, 2020 Order, Misc. No. 18-245. Over Mr. Teo's objection on Fifth Amendment grounds, he was ordered to comply, and did so by representing that he had no documents responsive to the Government's specific demands. Six weeks later the Government obtained the Indictment charging Mr. Teo with tax offenses

related to AAST's tax returns, expressly alleging that AAST's tax returns are false because it "did not have Cost of Goods Sold." ECF 10 at ¶¶ 7-8.

It is inconceivable that the Government took these measures to obtain evidence in the name of the Grand Jury and then failed to present it, and the allegations of the Indictment confirms that it ***must*** have presented this evidence.

As already noted, Mr. Teo's motions assert that evidence was obtained in violation of his Fifth Amendment rights, and that the Court should conduct a *Kastigar* hearing to determine if the Government has made use of that unconstitutionally obtained evidence. Thus, we are entitled to know if the Grand Jury was advised by a witness or a government attorney that Mr. Teo ***admitted*** he had no documents substantiating the Cost of Goods Sold line entries on AASTs tax returns. We are also entitled to know if the Government made derivative use of the information by having a witness testify more generally that there were no documents substantiating these expenses or, indeed, what evidence was before the Grand Jury that permitted it to conclude that there were ***no*** Cost of Goods Sold as reflected on AAST's tax returns for the years charged.

In short, the Government has an obligation to produce the requested Grand Jury testimony, which testimony is critical to the adjudication of Mr. Teo's pending motions. Furthermore, its failure to produce the testimony may constitute a *Brady* violation.

Very truly yours,

Mark Rufolo

# EXHIBIT B

# STERN KILCULLEN & RUFOLO, LLC
COUNSELORS AT LAW

HERBERT J. STERN*
KEVIN M. KILCULLEN+
PASQUALE J. RUFOLO
JOEL M. SILVERSTEIN*
MARK W. RUFOLO*
MICHAEL DINGER*
BRIAN J. DEBOER*
JOHN E. TRAVERS^
KENNETH DEL VECCHIO**
ROBERT W. FERGUSON*
EDWARD B. BECKER*
CORINNE M. MAROTTA

JOSEPH A. ROMANO+
ALEXANDER P. FERSA

325 COLUMBIA TURNPIKE
SUITE 110, P.O. BOX 992
FLORHAM PARK, NEW JERSEY 07932-0992
TEL: 973-535-1900 * FAX: 973-535-9664

214 BRAZILIAN AVENUE
SUITE 270
PALM BEACH, FLORIDA 33480
561-721-6525

+Admitted in NJ and FL
*Admitted in NJ and NY
^Admitted In NJ, NY, PA and FL
** Admitted in NJ and PA


October 29, 2020

**Via Email Only**

Ari B. Fontecchio
Vijay Dewan
Assistant United States Attorneys
970 Broad Street
Newark, New Jersey 07102

Re: U.S. v. Alfred Teo, Sr.
Crim. No. 20-690 (KSH)

Dear Mr. Fontecchio and Mr. Dewan:

On August 20, 2020, the Court entered a Scheduling Order (Doc 15) (the “Scheduling Order”), paragraph 6 of which states that on or before November 1, 2020, the defendant shall provide the discovery required by Fed. R Crim. P. 16(b)(1) which, in turn, requires the defendant to disclose certain documents if he intends to use the item in the defendant's case-in-chief at trial.

Please be advised that Mr. Teo has not yet made any determination about what documents he intends to use in his case-in-chief and reserves his right to produce such documents when this determination is made.

Very truly yours,

/s/ Mark Rufolo
Mark Rufolo